UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:14-CR-108-KKC-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JAKEY HEATH WEBER, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral, *see* DE #46, considers reported violations of supervised release conditions by Defendant, Jakey Heath Weber. This District originally convicted Defendant for conspiring to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. DE #27 (Judgment). In December 2014, Chief Judge Caldwell sentenced Weber to time served (by then, approximately 2-2.5 months), followed by 3 years of supervised release. *Id.* In a September 5, 2017, Violation Report, the USPO alleged four violations (some with numerous sub-allegations). In a September 6, 2017, Addendum, the USPO alleged two additional violations. The Court covered all 6 allegations during the revocation proceedings, but the final hearing ultimately concerned only Violations 5-6. *See* DE ##44 (IA Minutes); 49 (Final Hearing Minutes). Violations 1-4 remain pending, but deferred by agreement awaiting state prosecution results. At the final hearing, the Court afforded Weber all rights due under Rule 32.1 and 18 U.S.C. § 3583.[1]

---

[1] Weber waived the right to a preliminary hearing. DE #44. The Court, on referral from the District Judge, conducted the final hearing. After a full hearing, the Court found the violations as set out in the Addendum based on USPO O'Brien's testimony and Weber's admission of meth use to the USPO. The Court offered the parties the opportunity to present any proof and make

1

The relevant allegations are that (1) Weber used methamphetamine; and (2) because the Sixth Circuit equates drug use to possession,[2] Weber possessed meth in violation of 21 U.S.C. § 844(a).

At the final hearing, the Court heard the sworn testimony of USPO Kristen O'Brien, as well as argument and proffer by counsel. USPO O'Brien's testimony, and Weber's admission to her, established the violations under Rule 32.1 and § 3583. Defendant did not seriously contest this. Counsel for the United States and Defendant each made certain sentencing suggestions. Weber allocuted.

The Court has evaluated the full record, including the violation report, addendum, Weber's criminal record, the sentencing materials from the underlying Judgment, the materials from the prior revocation proceedings, and all information formally received since September 5, 2017. The Court has considered all of the § 3553 factors imported into the § 3583(e)(3) analysis. Under § 3583, a defendant's maximum penalty for a supervised release violation[3] hinges on the gravity of the underlying offense of conviction. Weber's conviction is for a Class C felony. 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under § 3583 is 24 months of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39

---

any argument concerning the proper disposition of the matter. The Court also expressly informed Defendant of his right of allocution before the District Judge.

[2] *United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995) ("[F]or purposes of 18 U.S.C. [§] 3583(g), 'use' of a controlled substance constitutes 'possession' of the substance.").

[3] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which USPO O'Brien's unchallenged testimony, reference to the instant test result, and Weber's admission of meth use to her, obviously satisfy.

(6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1(a)(2), violation 6 (the most serious) would qualify as a Grade B violation. With a criminal history category of I (the category at the time of the sentencing) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 4-10 months.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). In this instance, the potential reimposed supervised release term is the rest of Defendant's life. *See* 18 U.S.C. § 3583(b) & (h); 21 U.S.C. § 841(b)(1)(C).

The Court has carefully weighed the nature and circumstances of the original offense, the violations,[4] and Defendant's particular history and characteristics. Defendant, on September 5, 2017, tested positive for amphetamines, but contemporaneously denied drug use to the USPO. Only after arrest on the other pending allegations and upon arrival at the custodial facility did

---

[4] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

3

Defendant phone USPO O'Brien and admit meth use (he stated he didn't want to admit the use in the presence of his sister, out of embarrassment) and his prior untruthfulness. He told Officer O'Brien he'd used for about two months. Engaging in meth-use conduct poses and fuels a great danger to the surrounding community. That danger is all the more acute here, given the admitted use within days after Weber's most recent release from state custody for worrisome Garrard charges. Indeed, Weber's criminal conduct amounted to, with his record, a federal felony. The Court hopes these revocation proceedings awaken Weber—who was given great leniency on the underlying conviction and in the prior revocation proceedings and who asserts only recent development of a drug problem—to the need to course correct toward a better path in life and away from potential increasingly serious conduct and consequences he faces if he continues using meth.

The Court sees, in the circumstances, no treatment-based exception to mandatory revocation and incarceration. *See* 18 U.S.C. § 3583(g); U.S.S.G. § 7B1.4 app. note 6. For the reasons stated at the final hearing, the Court finds the exception, as to Weber, an ill fit and a revocation period here mandated, although the Court remains cognizant of the need for treatment and incorporates that need, as appropriate, into the recommended sentence. Essentially, the Court's view is due to Defendant's lack of history of drug abuse, the leniency twice previously shown him, and his initial denial of meth use to the USPO. In this context, with Weber's particular history, the Court finds that recommending treatment in lieu of revocation would not sufficiently account for the statutory factors, given the violations, prior leniency, Defendant's course of conduct, and the current overall status. Likewise, U.S.S.G. § 7B1.3(a)(1) mandates revocation for a Grade B violation.

For all the reasons stated, and based on the violations found, the Court **RECOMMENDS** that the District Court:

(1) **REVOKE** Weber's supervised release;

(2) commit him to a term of incarceration of **4 months**; and

(3) impose **2 years** of additional supervision to follow, on all the conditions previously imposed, as well as an additional condition that the USPO enroll Defendant in a suitable drug treatment program (to be set at the USPO's discretion). Weber shall participate in any such treatment in good faith. This period is adequate to serve the goals of further supervision.

After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court views the recommended sentence as sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The recommended imprisonment is at the low end of the Guideline range, yet still a significant deprivation of liberty. The Court carefully took the views of the United States and defense into account in reaching this result, and the recommendation reflects the need to appropriately deter Weber, in light of the factors considered above, from future drug-use violations, give him an opportunity to be clean, and afford him a future opportunity to attend treatment, as he now states he desires. The public also needs protection from Weber, at least for a time. The Court finds that the recommendation is, on this record, a reasonable result that honors the sentencing factors in Defendant's individual case.[5] Weber, as the record suggests, is a highly skilled individual with the potential to contribute much to society and live a full, enriching life—indeed, he has done so for previous periods of time.

---

[5] Additionally, as already stated, Violations 1-4 still pend for future adjudication and potential punishment.

With Defendant turning to more serious (indeed, felonious) conduct (meth use) and lying about it, and in light of the leniency this District has twice previously shown him, the Court views this recommendation as appropriately attempting to wake Weber up to the need to live within the law and be a positive, contributing member of society.

Defendant's right of allocution under Rule 32.1 persists, as reflected in the record. Any waiver should comport with the Court's standard waiver form, which the Court provided to defense counsel at the final hearing. Absent waiver, the District Judge will set the matter for a hearing to include allocution.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 13th day of September, 2017.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge